Gaither *v.* Tilford.

MAY 29, 1802.

# John R. Gaither *v.* Jeremiah Tilford.

*Upon a writ of error to reverse a decree of the Bardstown District Court.*

Where the calls in an entry render the addition of a word necessary to complete the obvious intention of the locator, it will be supplied by the court.

The decision of this suit principally depends on the proper construction of the plaintiff's location, which is as follows: "John Gaither, assignee, &c., enters 500 acres, upon a treasury warrant, opposite to the mouth of Floyd's fork, on the south side of the town, and up the said fork and out for quantity." At first view it would seem that the opinion of the court below on his location is correct; which is as follows: "The entry is so vague and uncertain in itself that it can not be sustained. Were we at liberty to supply a single word, the uncertainty and repugnancy might be removed. As it is, we can reject no call that will aid the entry

and cure its defectiveness. We can not supply a word, because there is no precedent for it, and because we should establish a precedent which might lead to the greatest inconveniencies." This, in general, is sound doctrine; but to this, as well as most other general rules, there may be some just exceptions. There are well approved precedents of parts of locations having been rejected, where a word or an expression had no certain meaning, or was incompatible with other calls therein which were unequivocal, and perhaps for some other reasons. And this court can give no reason why a word or expression ought not to be added to a location where the unequivocal calls it contains render the addition necessary to complete the obvious intention of the locator. So far as individuals are concerned, the sole end of a location is to enable subsequent adventurers to locate with certainty the adjacent residuum of vacant land, and to answer that purpose it can make no difference whether it be redundant or defective in some of its parts, provided its intention can be ascertained. In the case now under consideration, it is proven, by the exhibits in the cause, that the water course now known by the name of Floyd's fork was generally known by that name at the time the location was made; also, that at the same time the water course with which it unites, from the junction upward, was generally known by the name of the town fork, and below the junction by the name of Salt river; and further, that the point opposite to the mouth of Floyd's fork, or at right angles to the general course of the Town fork and Salt river, at that place, is in a southwardly direction from the mouth of Floyd's fork. So that from the first call in the location, "opposite to the mouth of Floyd's fork," taken alone, must necessarily be understood, by persons acquainted with those circumstances, that the land intended by the locator lay on the south side of the Town fork and Salt river.

The second call is, "on the south side of the town," which every attentive reader will think defective, and be impressed with the belief that the word *fork* must be subjoined thereto, as being inadvertently omitted by the locator or surveyor when the location was made. And in this belief he would be confirmed by the remaining call, "and up the said fork and out for quantity," which, if understood as meaning Floyd's fork, would be altogether vague, as it would then be uncertain on which side of that fork it was intended the land should lie. But it is also proven that before this location was made there was a station, or rather two stations

Gaither *v.* Tilford.

combined, on the north side of Salt river, at the distance of about half a mile from the mouth of Floyd's fork, and where some ol the inhabitants were desirous that a town should be laid off and established, and that the place was sometimes called the town; from which it is urged that this place must have been intended by the call, "on the south side of the town." It is not, however, proven that the place had generally obtained that name, but on the reverse, some of the inhabitants of the place had not heard it so styled; therefore, a call for *the town* would not have given specialty to the location, because by that name the place was not generally known. Much less should it be considered as the place meant by the expression, *the town,* in this location, because it would be repugnant to the call "opposite to the mouth of Floyd's fork," and render the call "up the said fork and out for quantity" altogether repugnant to both the other calls. Indeed, it seems to the court that the contradictions and uncertainties with which the supposition would crowd the location not only forbid its being indulged, but put it beyond doubt, if any remained, that the word *fork* ought to be subjoined to the call "on the south side of the town," and then that the several parts of the location will be strictly consistent with each other, and the whole taken together be sufficiently special and precise; and, finally, that the word *fork* at the end of this second call ought to be taken as necessarily implied, to avoid the absurdities which otherwise would follow; and, on the location thus construed, it appears that the survey has been properly made, or at least that if the lower corner of the survey had been fixed more exactly opposite to the mouth of Floyd's fork, the other party would not thereby have saved more land. Therefore, it is decreed and ordered, that the decree of the said district court be reversed, and that the plaintiff recover of the defendant his costs by him in this behalf expended. And it is further decreed and ordered, that the suit be remanded to the court from whence it came, that the said court may cause to be ascertained, by metes and bounds, the quantity of the interference of the surveys which have been made by the parties, so far as a survey made conformably to the foregoing opinion shall also interfere, and enter up a decree accordingly for the said plaintiff, and that it decree and order in the cause whatever else law and equity shall require; which is ordered to be certified to the said court.

11

## MAY 10, 1803.

The court being now sufficiently advised of and concerning the premises, and having re-examined the record and proceedings herein, can not discover that the decree of this court pronounced May 29, 1802, is erroneous, or the opinion by which it is accompanied.

Wherefore, it is decreed and ordered, that the said decree do stand unaltered; which is ordered to be certified to the circuit court for the county of Nelson, together with the said decree of this court, and the order of revivor against the heirs of the said Tilford.